UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY D. DELGADO,

       Plaintiff,                    CIVIL ACTION NO. 11-12205

      v.                              DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF                  MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On May 20, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Supplemental Security Income ("SSI") benefits (Dkt. No. 3). Cross-motions for summary judgment are pending (Dkt. Nos. 8, 13). Plaintiff also filed a response brief (Dkt. No. 14).

    *B.    Administrative Proceedings*

Plaintiff applied for SSI benefits on October 27, 2006, alleging that she became unable to work on December 17, 1999 (Tr. 132, 185-188). The application was initially denied by the Commissioner on February 9, 2007 (Tr. 104-107). Plaintiff requested a hearing and, on April 17, 2009, Plaintiff appeared without counsel before Administrative Law Judge (ALJ) Mary M. Kunz,

who considered the case *de novo*. In a decision dated May 28, 2009, ALJ Kunz found that Plaintiff was not disabled (Tr. 132-142). Plaintiff requested a review of this decision on July 22, 2009 (Tr. 159-161). On September 10, 2009, the Appeals Council ordered the case remanded for a new hearing (Tr. 162-166). In particular, the Appeals Council found that ALJ Kunz did not properly weigh the opinions of two treating physicians – Dr. "Barlwoz" (Dr. "Barlwoz" is actually Dr. "Barkway") and Dr. Birbeck. The Appeals Council specifically ordered that:

> Upon remand the [ALJ] will:
>
> • Obtain additional evidence concerning [Plaintiff's] impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional evidence may include, if warranted and available, a consultative examination and medical source statements about what the claimant can still do despite the impairment.
>
> • Address third party evidence under the above cited Rulings, providing rationale for the conclusions reached.
>
> • Give further consideration to [Plaintiff's] maximum [RFC] during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 416.912).
>
> • If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on [Plaintiff's] occupational base (Social Security Rulings 83-12 and 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).
>
> (Tr. 164-165)

A second hearing was held before ALJ Thomas Walters on December 3, 2009 (Tr. 68-101). On March 22, 2010, ALJ Walters also found that Plaintiff was not disabled (Tr. 15-34). On March 18, 2011, ALJ Walters' decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-24E and 28F, Tr. 328-330, 930-963), the Appeals Council denied Plaintiff's request for further review (Tr. 1-5).

For the reasons set forth below, this Magistrate Judge finds that the ALJ's decision contains errors of law. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED**, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be **REMANDED** for a new hearing consistent with the discussion below.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 33 years old on the date she applied for SSI benefits (Tr. 27). Plaintiff has past relevant work as an inspector (Tr. 27). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 27, 2006 (Tr. 20). At step two, the ALJ found that Plaintiff had the following "severe" impairments: history of right humerus fracture and surgical repair; status post right rotator cuff repair; mild degenerative and bulging discs of the spine; obesity; diabetes; history of kidney stones; headaches; sleep apnea; affective disorder; post-traumatic stress disorder; borderline intellectual functioning. *Id*. At step three, the ALJ found no evidence that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, the "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.

Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 23-24).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "sedentary work...with the following [limitations]: she can lift and carry 10 pounds occasionally and less than 10 pounds frequently; she can sit 6 hours of an 8-hour workday and can stand and/or walk 2 hours in an 8-hour workday; she requires a sit/stand option every 30-60 minutes; she cannot perform prolonged walking; she can only occasionally bend, twist, turn or climb; she cannot repetitively grip or grasp with the upper extremities; she cannot use air or vibrating tools; she cannot perform jobs that require her to read; she cannot consistently carry out complex or detailed instructions, and she is relegated to performing unskilled entry level positions" (Tr. 24). At step four, the ALJ found that Plaintiff could not perform any past relevant work (Tr. 27). At step five, the ALJ denied Plaintiff benefits, because he found that Plaintiff could perform a significant number of jobs available in the national economy, such as parking lot attendant (1,000 jobs in the State of Michigan); assembler, bench (3,500 jobs in the State of Michigan); packager (3,500 jobs in the State of Michigan); or security monitor positions (1,000 jobs in the State of Michigan) (Tr. 28).

### B. *Administrative Record*

Plaintiff challenges three aspects of the ALJ's ruling – (1) the ALJ failed to account for the side-effects of Plaintiff's prescription medication; (2) the ALJ failed to comply with the terms of the remand order from the Appeals Council and failed to give proper weight to an opinion from Plaintiff's treating physician; and (3) the ALJ failed to properly account for Plaintiff's fatigue, shoulder problems, manual dexterity limitations and the need for a sit/stand option when

crafting Plaintiff's RFC. Since Plaintiff only raises these three arguments, the summary of the administrative record will focus on the areas directly touching these matters.

Plaintiff testified at the hearing that she was involved in a car accident in 1999, in which she fractured her "pelvic" and injured her rotator cuff (Tr. 77). As a result, she underwent multiple surgeries as a result, and ALJ Kunz noted that Plaintiff had suffered a residual musculocutaneous nerve injury with axonal loss and ongoing denervation (Tr. 148). Although Plaintiff subsequently regained good motion and strength, she later began to again experience shoulder pain (Tr. 149). As a result, Plaintiff underwent a rotator cuff repair with acromioplasty of the right shoulder in February of 2001 (Tr. 149). An MRI in April of 2001 showed evidence of an ongoing, mild rotator cuff impingement, with a small to moderate sized spur formation and a partial rotator cuff tear of moderate severity (Tr. 149). At the most recent hearing, Plaintiff testified that she still had limited range of motion with her right arm, and had trouble reaching both behind her and overhead (Tr. 78).

Laurie Barkway, D.O., treated Plaintiff during 2009 (Tr. 885-904). On February 9, 2009, Dr. Barkway completed a report assessing the limitations imposed by Plaintiff's conditions (Tr. 845-846). Some of Dr. Barkway's conclusions are a bit cryptic, since she checked multiple boxes (*e.g.,* frequently, occasionally and never) when asked if Plaintiff could lift/carry less than 10 lbs. and if Plaintiff could lift 20 lbs. (Tr. 846). Dr. Barkway did clearly indicate that Plaintiff could only stand or walk for two hours out of an eight hour workday, could not use either arm for repetitive reaching or fine manipulation, and could not push or pull with her right arm (Tr. 846).

On September 2, 2009, Plaintiff complained to Dr. Barkway that she was experiencing worsening pain, spreading to her hands and legs and causing numbness, tingling, and pain (Tr. 904). Dr. Barkway's treatment notes indicate that Plaintiff's physical therapist was questioning

whether Plaintiff should continue "PT" since she appeared to be "getting worse not better" (Tr. 904). Dr. Barkway referred Plaintiff to Allen Clague, M.D. for a neurological consultation "in regards to [Plaintiff's] underlying pain and muscle cramping in her extremities" (Tr. 867).

On September 8, 2009, Dr. Clague wrote that Plaintiff "was diagnosed with adult onset diabetes mellitus in 2004 and recently has been placed on insulin therapy" (Tr. 867). Dr. Clague concluded that Plaintiff "presents with a bilaterally symmetrical diabetic peripheral neuropathy[2] most prominent in the lower extremities with some involvement of the upper extremities as well" (Tr. 868).

### III. DISCUSSION

#### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

---

[2] "Diabetic neuropathies are a family of nerve disorders caused by diabetes. People with diabetes can, over time, develop nerve damage throughout the body." *See* http://diabetes.niddk.nih.gov/dm/pubs/neuropathies/ (last visited April 26, 2012). "Symptoms of nerve damage may include...numbness, tingling, or pain in the toes, feet, legs, hands, arms, and fingers...wasting of the muscles of the feet or hands [and]...weakness" *Id.*

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.  *Governing Law*

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the

Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden shifts to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As stated above, Plaintiff raises three arguments on appeal, each is discussed below:

#### 1. Medication Side-Effects

Plaintiff's first argument on appeal is that the ALJ did not give proper credence to Plaintiff's claimed adverse side-effects from her prescription medications. Specifically, Plaintiff argues that the ALJ erred in not crediting Plaintiff's testimony that her medications caused severe drowsiness. This Magistrate Judge finds that Plaintiff's argument that the ALJ erred because he failed to adopt Plaintiff's testimony regarding medication side effects is not well-taken. "Allegations of a medication's side effects must be supported by objective medical evidence." *Daniels v. Comm'r of Soc. Sec.*, 2008 WL 4394356 (W.D. Mich. 2008), citing, *Farhat v. Sec'y of*

*Health and Hum. Servs.*, 1992 WL 174540, *3 (6th Cir.1992); *Bentley v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 434, 435 (6th Cir. 2001) (noting the absence of reports by treating physicians that claimant's "medication caused drowsiness as a side effect"); *Donegan v. Sec'y of Health and Hum. Servs.*, 1993 WL 291301, *7 (6th Cir. 1993) (no objective medical evidence supported claimant's allegation that medication made him so drowsy he could not work); *Dodd v. Sullivan*, 963 F.2d 171, 172 (8th Cir. 1992) (no evidence in the record that claimant told his doctors that the medication made him drowsy); *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (noting that the record did not disclose concerns about side effects by the several doctors who examined and treated claimant); *see also Cross v. Comm'r of Soc. Sec.*, 2008 WL 5071714, *6 (W.D. Mich. 2008).

Plaintiff does not direct the Court's attention to any medical records that indicate she was drowsy or impaired by any medications' side effects. Rather, Plaintiff points to the testimony of the Vocational Expert (Dr. Heckler) (Tr. 98-99), which suggested that Plaintiff would be unable to work, if Plaintiff's own testimony concerning fatigue from her medications were deemed credible. In circular fashion, Plaintiff then points to her own testimony and the testimony of her half-sister, Heather Brezika (Tr. 89), which stated that Plaintiff's medications made her drowsy. What Plaintiff fails to do, however, is point out any statement from a physician (*i.e.,* objective medical evidence) indicating that her medications made her drowsy. In the absence of objective medical evidence indicating that Plaintiff was severely fatigued by her prescription medications, this Magistrate Judge cannot recommend a remand on this issue.

### 2. The ALJ Did Not Give Proper Weight To Plaintiff's Treating Physician

Plaintiff's second argument is that the ALJ failed to follow the dictates of the Appeals Council's remand order (Tr. 164-165) and, more specifically, that the ALJ failed to give proper

-11-

weight to the opinion of one of Plaintiff's treating physicians, Dr. Barkway. Generally, greater deference is given to the opinions of a treating physician than to those of a non-treating physician; this is commonly known as the treating physician rule. *See* SSR 96–2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)). And where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he must apply the following factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 C.F.R. §§ 416.927, 404.1527.

More important for purposes of this case is that 20 C.F.R. § 404.1527(d)(2) (and § 416.927) "contain[ ] a clear procedural requirement." *Wilson*, 378 F.3d at 544. In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). This procedural requirement is justified on two grounds. First, the explanation "let[s] claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some

reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (internal quotation marks omitted). Second, the explanatory requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* An ALJ's failure to comply with the procedural, explanatory component of the treating physician rule is typically not harmless error. "A court cannot excuse the denial of a mandatory procedural protection simply because ... there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.'" *Wilson*, 378 F.3d at 546. Restated, "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The Sixth Circuit has, however, indicated that there are certain, narrow exceptions to the notion that a violation of the procedural aspect of the treating physician rule is not harmless error. In *Wilson*, the Sixth Circuit found none of three possible exceptions applicable to the facts before it, but also explained,

> That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal.... There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation.

378 F.3d at 547. Thus, the Court will consider, in turn, whether (1) the Medical Source Statement completed by Dr. Barkway is "so patently deficient" that the ALJ would not possibly credit it on remand; (2) the ALJ adopted the opinion of Dr. Barkway or made findings consistent with her opinion; and (3) whether the ALJ has otherwise satisfied the purposes behind the explanatory safeguard. The ALJ wrote the following concerning Dr. Barkway's report:

> In a February 2009 document, family physician, L, Barkway, D.O., completed an assessment of [Plaintiff] essentially indicative of an ability to perform a range of light sit/stand work. Aspects of Dr. Barkway's appraisal are consistent with the [RFC] adopted, however, the overall record persuades the Administrative Law Judge that [Plaintiff] is limited to no more than sedentary duties. (Tr. 26)

Plaintiff first complains that the ALJ mischaracterized Dr. Barkway's report by finding it "essentially indicative of an ability to perform a range of light sit/stand work." Plaintiff argues that Dr. Barkway's report actually limits Plaintiff to a narrow range of "sedentary" work. The report itself (Tr. 846) is somewhat cryptic as to its conclusions. In the box related to "Lifting/Carrying," there are three check-box options listed – "Frequently," Occasionally" and "Never" – for increasing weight ranges (less than 10 lbs., 10 lbs., 20 lbs., 25 lbs. and 50 lbs.) Dr. Barkway checked all three options for less than 10 lbs., checked occasionally only for 10 lbs., checked occasionally and never for 20 lbs., and checked never for 25 lbs. and 50 lbs. Obviously, checking multiple options for 10 lbs. and 20 lbs. does not make sense as frequently, occasionally and never are mutually exclusive choices. Dr. Barkway's report thus veers close to the "patently deficient" harmless error identified in *Wilson*. However, the Appeals Council appeared to recognize the flaw in Dr. Barkway's report when it ordered a remand to "[a]s appropriate ... request the treating source to provide additional evidence and/or further clarification of the opinion" (Tr. 164). Undoubtedly, Dr. Barkway's opinion is unclear as to the amount of weight Plaintiff can lift or carry. ALJ Walters did not appear to request any further evidence or

clarification from Dr. Barkway, despite the Appeals Council order directing the ALJ to request such clarification "as appropriate." Thus, the ALJ's failure to request additional evidence and/or further clarification of Dr. Barkway's report was error.

More problematic is that Dr. Barkway checked "neither" when asked if Plaintiff could use her upper extremities (*i.e.* arms) for repetitive reaching (Tr. 846). Furthermore, although ALJ Walters found Plaintiff more limited in some aspects (*i.e.*, ALJ Walters limited Plaintiff to "sedentary" as opposed to ALJ Kunz, who found Plaintiff could do "light" work), in regards to reaching ALJ Kunz found Plaintiff could only "occasionally" reach with her right arm, whereas ALJ Walters found no reaching limitation. In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that "a subsequent ALJ is bound by the findings of a previous ALJ ... absent new and additional evidence." 126 F.3d 837, 842 (6th Cir.1997). This rule is analogous to common law principles of *res judicata*. *See id.* at 840-41. ALJ Walters recognized that *Drummond* applied, and concluded:

> In an earlier decision, the [ALJ] determined that [Plaintiff] had a [RFC] for a range of light sit/stand work that did require more than minimal contact with coworkers/general public, or more than occasionally over the shoulder reaching with the right upper limb, within which a significant number of existing jobs could be performed. As there is new and material evidence **delineated above** relating to [Plaintiff's RFC], the former ALJ finding need not be adopted. Again, the totality of evidence convinces the undersigned that [Plaintiff] cannot lift over 10 pounds. On the other hand, the available record does not reflect serious residual postoperative problems affiliated to [Plaintiff's] right upper extremity in terms of range of motion, including upward reaching movements (Tr. 27) (emphasis added).

Thus, the Court must review the new and material evidence "delineated above" by ALJ Walters to see if it was proper for him to reject the reaching limitation found by ALJ Kunz. However, the discussion contained preceding the above the quoted section does not specifically discuss any evidence relating to an improvement in Plaintiff's shoulder condition. Granted, ALJ Walters'

-15-

discussion does obliquely mention medical records indicating that Plaintiff's "strength, tone, gait, station and balance were normal" (Tr. 22) and that Plaintiff's "neurological functions in terms of motor power, reflex activity and sensation were largely intact, and her musculoskeletal and extremity reviews were commonly free of deformity, clubbing, cyanosis, edema, heat, discoloration, ulceration, diminished pulsation or atrophic changes" (Tr. 26). But, these broad statements do not specifically address Plaintiff's shoulder strength. ALJ Walters' failure specifically indicate which "new and material" evidence he was relying on to conclude that Plaintiff no longer had shoulder impairments was error. Furthermore, there is objective medical evidence in the record indicating that Plaintiff continued to suffer from shoulder problems. Specifically, Dr. Clague's September 8, 2009 report diagnosing Plaintiff with "bilateral[] symmetrical diabetic neuropathy most prominent in the lower extremities *with some involvement of the upper extremities as well*" (Tr. 868) (emphasis added).

In sum, this Magistrate Judge finds that the decision of ALJ Walters did not give appropriate weight to Plaintiff's treating physician, Dr. Barkway, and/or did not adequately explain why he departed from the limitations found by Dr. Barkway, specifically the limitation on reaching with both arms. Simply put, the ALJ did not set forth "good reasons" for discounting the opinion of Plaintiff's treating physician. Therefore, a remand is required so that the ALJ can, at a minimum, explain more fully why he rejected the opinion of Dr. Barkway. ALJ Walters also erred by not requesting further clarification of Dr. Barkway's opinion, particularly since a portion of the opinion is internally inconsistent, given that Dr. Barkway checked multiple boxes concerning how frequently Plaintiff could lift or carry various weights.

### 3. The ALJ's RFC Is Not Supported By Substantial Evidence

Plaintiff's third argument is closely related to Plaintiff's second argument, as this final argument claims that the ALJ's RFC finding is unsupported by substantial evidence. Essentially, Plaintiff is arguing that, if the ALJ properly recognized her shoulder impairment (and her medication-induced fatigue), then Plaintiff would not be able to perform a substantial portion of the jobs identified by the vocational expert. Since this Magistrate Judge finds that the ALJ did not properly assess the opinion of Plaintiff's treating physician, Dr. Barkway, it follows that the RFC is flawed and that the entire five-step analysis should be redone. Therefore, Plaintiff's third argument is also well-taken – but only to the extent that there is no limitation on reaching in the RFC; Plaintiff's argument concerning her prescription drug side-effects was not persuasive.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this matter be **REMANDED** for a new hearing consistent with the discussion above.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                              s/Mark A. Randon
                                              MARK A. RANDON
                                              UNITED STATES MAGISTRATE JUDGE

Dated: May 1, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, May 1, 2012, by electronic and/or ordinary mail.*

                                              *s/Melody Miles*
                                              *Case Manager to Magistrate Judge Mark A. Randon*
                                              *(313) 234-5542*